Good morning, ladies and gentlemen. The third member of our panel today, Judge Jose Cabranes, is not able to be with us in person. He will, however, listen to the arguments and review all the matters before we vote as a panel on the appeals that are scheduled. Before we hear the appeals, though, we do have a bail application, so counsel will hear from you first. Thank you, Judge Raggi. The canon shamingam of lames and convicts in the movement, Jesse Litvack. May it please the Court. It is puzzling why the government is fighting so hard to deny Mr. Litvack continued release pending appeal. The government concedes that Mr. Litvack poses no risk of flight or danger to the community, and the government does not dispute that if Mr. Litvack were in prison now, he would serve much, if not all, of his two-year sentence before this appeal can be decided. Yet the government opposes Mr. Litvack's motion for continued release, solely on the ground that his appeal does not present a substantial question of law. That contention, in our view, is mistaken. Having started this prosecution with 16 counts against Mr. Litvack almost five years ago, the government is now left with only a single count of conviction. And the jury convicted Mr. Litvack... It didn't... There was a prior appeal. I was convicted the first time there was a prior appeal. I was sent back. And what is it that differs in this case from the prior appeal? Aren't you rehashing the arguments that you lost the first time? No, Judge Walker. And with regard to our arguments concerning really the central element here, the element of materiality, we first and foremost are making a factual insufficiency argument, which we did not make the first time around, regarding the misstatement pertinent to count four, the sole count of conviction. And on that count, our submission is quite straightforward. It is that on that count, Mr. Litvack was convicted solely on the basis of testimony from the sophisticated institutional investor who was the counterparty, to the effect that Mr. Litvack made these statements, and these statements were important to the investor, because the investor was relying on the conceitedly erroneous assumption that Mr. Litvack was acting as his agent. Now, of course, we have the discreet argument that that... But there was also evidence, I believe, that it was understood that there would be a six-tick profit to Jeffrey's, and in effect, he engineered a 14-tick profit by concealing the purchase price. And Judge Walker, I think that that testimony illustrates that the institutional investor who was the counterparty was acting on this mistaken belief that Mr. Litvack was, in fact, his agent. And that is because, as you'll see from the testimony of Mr. Norris, which is included in our addendum, he repeatedly referred to the fact that there was this discreet commission. The fact that he believed it is not necessarily true, because that's not the basis necessarily upon which the jury would have convicted. That would have just been some evidence of what the custom was and so forth. But it's not determinative, it doesn't seem to me. Well, but Judge Walker, it explains why he thought the misstatement was important. But even if you exclude that from the analysis for purposes of materiality, our core submission — and this does overlap somewhat with our submission to the prior panel — is that a mere statement that something is important in hindsight is insufficient to rise to the question of materiality. And that is for the simple reason that the government can point to no authority, no affirmative authority from this court or any other court, for the proposition that a fact that is merely significant in negotiations is somehow material. And that is precisely why this case presents, at a minimum, a substantial question for appeal. And to the extent that the government argues that the panel's earlier ruling with regard to legal insufficiency is somehow preclusive here, I think the panel took great pains to make clear that it was making that determination in the panel's own words on the record before it, and that it was not purporting to make a determination for all purposes and for all time, that these types of — It was the case. It was the same case. And they made a determination. The case went back. It was retried. And presumably every concern that the prior panel had was addressed by the district court. And now you're back again claiming essentially the same problem. But with regard to count four in particular, Judge Walker, the evidence here is, if anything, weaker than it was on the other counts. And again, that's largely because the district court permitted the testimony of the counterparty to the effect that the counterparty believed Mr. Litvak was acting as an agent. And the reason why we think that that is such a central error — That's your claim of error. But it's not going to succeed if materiality could be found regardless. I mean, you're basically arguing that it's not material for someone in your client's position to basically tell someone that they won the bid and then tell them that what they owe was — what is it? — $79.30, with an agreement that that's six ticks above the purchase price, when in fact it was several ticks higher than that, that none of that is material, and all because the buyer had initially said he would be willing to bid $79.24. I mean, it seems to me that on its face that materiality challenge isn't appealing. Well, I would flip that around, Judge Radji, and say that quite to the contrary, the evidence from Mr. Norris made clear that Mr. Norris, the representative of Invesco, was in fact willing to pay $79.30 for the bond at issue, and that is in fact the price that he did pay. Now, to be sure, he might have been operating under — You said it was going to go higher, but it was all on the basis of the six-tick profit margin. To be sure, Mr. Norris might have been operating under a misapprehension about the size of the profit margin that Jeffries cleared on the trade. A misapprehension due to what your client failed to say to him. Well, we're not disputing that there was a misstatement in this case, namely a misstatement that when Mr. Litvak acquired the bond from a third party, he did so at the price of $79.24. But for purposes of materiality, the critical point is that Mr. Litvak's misstatement in no way bore on the value of the security. Again, Mr. Norris got exactly the security he wanted for exactly the price — But it did not, with respect, Judge Walker, because — Well, you're saying that he'd already said he was going to go there. Actually, he said he had some flexibility. But it all depended on the six ticks. Six-tick profit. But no, I think on that point, Judge Walker, we respectfully disagree. And this is really going to be the core, I think, issue before the merits panel when we get to that point. This was an arm's-length transaction. Once Jeffries acquired the bonded issue, it was a price that Invesco was not willing to pay. Invesco would walk away. And in fact, what happened was Invesco said, we will pay $79.30. That was a price that was comfortably underneath the valuation that Invesco had independently reached. We're not the jury. I mean, you can argue this, and presumably did. Your burden on appeal is going to be to say that no reasonable jury could have found materiality on this record. And we're suggesting to you that not simply on the ground you're trying to cast this at, that the buyer was willing to pay a certain price, but looking at the facts in the light most favorable to the verdict they returned, which will be how it has to be assessed, that a reasonable jury could find materiality here. So don't argue it to us as if we're the jury. Tell us why no jury could have so found. I'm doing that only insofar as we have both a factual insufficiency argument and a legal insufficiency argument. But with regard to our legal insufficiency argument, I think our core submission here is quite simple. The misrepresentation in question did not go to the value of the security. It was a fact to be sure, based on this testimony, that the counterparty said he would have liked to have known. But those sorts of facts, negotiation facts, have never been held to be material. What do you mean by the value of the security? The parties negotiated a price, ended up with a price, and one side had been misled and the other side hadn't. They reached a conclusion. But you can't say that that conclusion would have been reached had the truth been stated, or at least the jury found otherwise. Well, I think we actually can say that. I don't think that there was evidence to the contrary. And indeed, even Invesco's own valuation indicated... The jury disagreed with that argument, correct? Well, I don't think that that's actually true. I think that the jury, and I think that if you look at all of the counts that went to the jury, I think that this makes this clear. I think that the most plausible explanation is that the jury was, in fact, misled by the testimony, the mistaken testimony by the government's own concession, that Mr. Norris thought that Mr. Litvak was acting as its agent. The jury was also told that he wasn't the agent. So they were told that that was a mistaken understanding. I mean, my concern here is that you seem to be arguing that when parties agree that there will be a payment to the intermediary, your client here, six ticks above the purchase price, that the fact that the buyer said, I'd be willing to go as high as X, doesn't mean that the person has to, when he negotiates his six ticks or when they set up the six ticks, doesn't have to tell him what X turned out to be. But Judge Ratchey, that would be no different from a case where, say, we enter into a transaction for a used car and I'm the seller. And I say to you, you know, I can't go any lower than a certain price. Now, it turns out that that's not, in fact, true. Suppose I say that my boss tells me that I can't go any lower than $5,000. The analogy's not apt. Here we're not talking about what could have been. Here there was a price that this was bought at. And the purchaser was not told by the intermediary what he had actually paid for the item. He would have paid more, but that's not what he paid. Fine. So change the hypothetical. Let's suppose that I say to you, I've got this great used car, but I can't Let's deal with this case as opposed to hypotheticals. Let's deal with this case. How does someone in your client's position get to set his commission price without telling the buyer what he actually paid? But Judge Ratchey, it's not a commission precisely because Mr. Litvack was not, in fact, acting as the agent. And you are correct to point out that the jury Margin of It's the profit margin Agreed upon profit margin And it has never been the case. And again, I would challenge Mr. Francis to cite a single case The agreed upon profit margin was not six ticks above $79.24. It was six ticks above the purchase price. But I don't think it really makes sense to talk about an agreed upon profit margin. What is agreed upon That's why you weren't very successful with the jury because it doesn't appeal to anybody's common sense. Well I think with all due respect, Judge Ratchey, the reason that it should appeal to common sense is precisely because this is a negotiation fact. This is a fact that is no different from a reservation price. And what meeting of the minds was there that Mr. Norris would pay Mr. Litvack six ticks above $79.24 no matter what the security was bought for? The meeting of the minds ultimately here was to sell this particular security for $79.30. And again, the misrepresentation at issue here did not go in any way to the quality or the value of the underlying security. It went to Norris' agreement to do that, to sell at $79.30. But the testimony indicated that Norris would still carry out the same transaction at $79.30 regardless of the misstatement precisely because He had known the profit margin was going to be 14 ticks instead of six. He might have negotiated harder. But again, there is no authority for the proposition that a fact that would have been important in negotiations, a fact that would lead the party is material. And again, to the extent that there is authority either from this court or from other circuits, it is quite to the contrary. All right. Well, we understand and you will make this argument for sure on appeal. The question is, what is your client's surrender date? September the 12th, Judge Raggi. And I would just say one other thing before I sit down, and that is that to the extent that the jury was instructed, as you rightly point out, that Mr. Litvack was not operating as the agent of the counterparties, the decision to permit the introduction of this testimony concerning the belief of the counterparties we would respectfully submit is really inexplicable. And again, the best evidence that the jury, in fact, was misled by that was the fact that the sole count on which they returned a conviction, when the evidence regarding the other counts was identical, was the point about agency. Can you answer one question for me? When is your brief due? Our brief is due next Friday, the 24th. Thank you very much. Right. And if I could have a minute for rebuttal, I'd appreciate it. I don't think you reserved any time. Thank you. Good morning, and may it please the Court. When would your brief be due? Ninety days thereafter. You know there's a request for expedited appeal. In the alternative, I mean, isn't there? Wasn't it bail or expedited appeal? Oh, OK. Yes, and in fact, Mr. Litvack was given a late surrender date so that he could, for family reasons is my understanding, and Mr. Litvack didn't ask for expedited appeal. All right. In any event, the application is for bail now. That's right. And the challenge to the defense is to show how there's a continued substantial question in this case. There was a substantial question in 2014 after the first trial. The merits panel decided that case in 2015, and now the substantial questions have been answered. So the evidence from trial two, particularly with respect to materiality, was essentially the same. And I was trial counsel on both trials, but you don't have to take my word for it. Judge Hall wrote in her ruling on the Rule 29 motion for acquittal, in the order denying that, that the record here was essentially the same. That's what she said. And it was. The defense called the same witnesses, just about. I think there was maybe one victim who we called in trial one and not in trial two. We didn't call an expert. The difference was the defense wanted an expert witness to respond to some of our evidence, including the evidence that two of the victims, Mr. Norris and another victim, understood mistakenly, but had the perception that Mr. Litvack was functioning as their agent. Now, they haven't defined agent. They didn't go to law school, and they didn't attempt to define agent in a legal way. They didn't say, oh, I understood he had a fiduciary obligation to me. What's it, how is it relevant to what the jury had to do or to decide, given that they were also instructed that he wasn't their agent? Why, why was that testimony put before the jury? The, the government's, from the government's perspective, all the information that the agents, or rather that the victims, pardon me, all the information that the victims had was relevant to the jury's consideration of whether or not they were reasonable investors. And so, some of the information they had was information provided by Mr. Litvack. Mr. Norris understood that Mr. Litvack was following his instructions, like an agent would, as, as he defined it, a functional agent, someone who's not risking their own capital, not going out and doing things on their own, and then hoping things work out for the best, but someone who is just following direction. He understood Mr. Litvack was following his instructions because Mr. Litvack said so. Now, that information is important to the jury's deliberation, and that's what the merits panel in the Litvack decision in 2015 said. They said it forms the context in which the jury has to consider whether the managers and traders who testified reflected the views of a reasonable investor. The whole trial, the second trial in particular, was about whether or not the handful of victims the government chose to call to the stand to testify as to the importance and materiality of Mr. Litvack's lies, whether or not they were reasonable investors, or whether their understanding was consistent with the reasonable investors. Let me be sure I understand you. Are you going to be arguing to the merits panel that though Mr. Litvack was not in the law an agent of Mr. Norris, that it was reasonable for Mr. Norris to think he was the agent? Is that what you're going to argue? I had not conceived of it that way. If I may, let me tell you. I'm not sure I would try it. No, I don't think we would. What I think, rather, we would say is Mr. Norris and a separate victim, which is worth pointing out, another victim, Mr. Wolman, on who the jury acquitted on his two counts, he had an understanding. How he reached that understanding, a lot of things went into it. But one of the things was that Mr. Litvack said, I'm using your bid. I'm following your instructions, and then later confirmed that. He said, I bid your level, or I bid words to that effect. Mr. Norris had an understanding that he was, therefore, following instructions. He calls that an agency trade, or he's acting as my agent. But he didn't say, oh, he's my fiduciary and all the legal entitlements that go with that. What we would argue to the merits panel is that it was not an abuse of discretion for the judge to permit that information to come in through direct. There's a couple of reasons. One is, as the merits panel in Litvack won in 2015 said, this is part of the context of determining whether or not this is a reasonable investor. And so the government should put it in. Second, it was going to come in anyway. Mr. Norris testified the same exact way in trial one. And so it wasn't like the defense was going to let it lie there. They were going to go after him with it. So sooner or later, that was going to come out. And in fact, in Litvack won, the argument that Mr. Chemeghan made was that he should have been able to put in, or rather, his partner should have been able to put in expert testimony to go after Mr. Norris and Mr. Woolman to show that, in fact, their understanding of agency was wrong. Not only did he get that in the second trial, he also, his partner also got to Mr. Norris and Mr. Woolman and other witnesses, other victims about agency and principle trading and how Mr. Norris was wrong. They got to close on it. They got expert testimony on it. And they also got a specific instruction that was new in the second trial that said, you heard testimony about trading as an agent. Mr. Litvack wasn't doing that. He was not trading as an agent. So there's no possibility that the jury was somehow confused into thinking that Mr. Norris's perception was some kind of legal opinion or legally valid. And to the extent that what Mr. Litvack is saying is that the jury is incapable of distinguishing between perception and reality between when people think and what the fact is, that's the function of a jury, not just to take whatever victims say and accept that as true, but to weigh it, not just to take testimony and evidence, but to weigh it and decide whether or not it can ports with what they think actually happened. And that's what they did here. What was the agreement that your adversary refers to that the price would be $79.30? My understanding was that he was prepared to go higher in the discussion, but that Norris was prepared to go higher, but the actual price of $79.30 had not been specifically determined. That is my understanding as well, Judge Walker. I've lived with this case for a long time and I'm very familiar with the facts here. If I may, the chronology is Mr. Norris, the victim, bids $79.24. Mr. Litvack lies to him and says, okay, I'm using your bid in this auction. Mr. Norris has no ability to do anything to verify that. He has no way of communicating directly with the seller. He just has to trust Mr. Litvack. Mr. Norris then comes back and says, I have more room. Now, one of the reasons why maybe Mr. Norris said that is based on his mistaken perception that Mr. Litvack was acting truthfully or was going to carry out his instructions. But one of the reasons he thought that was Mr. Litvack had just said that. He just said, I'm using your bid. The trade completes in very short order. I mean, this whole trade takes minutes. Mr. Litvack comes back and kind of tells the tale of how it went down and says, you know, recapitulates the lie, repeats it, says I used your $79.24 bid. And then Mr. Norris says, great, six ticks, six ticks. It's X plus six ticks. His understanding of what X is. He has only one source for that. And it's Mr. Litvack. Mr. Litvack lied to him twice about it. And so he, he added six ticks to X and got to 79.30. Had Mr. Litvack told the truth, which once he speaks, he has an obligation to tell the truth. It's, this is kind of black letter securities law. He didn't have to tell him he could have just said as Mr. Norris testified. There's two ways these auction trades can go down. Way one is where he purports to be carrying out his instructions. And then, uh, what in the market is called a commission, but we understand that's not a legal term. You can just think of it as compensation or agreed upon profit. Um, that gets added on top that's way one. But way two is, you know, that Mr. Litvack is going to act in his own best interest and he's going to back up your bid is what they call it. So you might say 79 and 24 judge, but he, maybe he says that's way too much. And so he bids 79 and 16 and he comes back to you and says, got it. Well, then you don't pay on top. There's no added, there's no X plus you just pay your 79 and 24 and you're done. So you can pick either of those two options. What Mr. Litvack did was he picked option two, but he claimed they were doing option one by So Mr. Norris understood that what he was doing was adding six sticks. It's 79, 24 to get to 79 and 30. He said that information was important to him, but he didn't stop there. And this is where the defense's analysis falls apart. They would like this to be like the city of Pontiac case where people just pled in a complaint, um, a pension fund pled in a complaint that this information was important, but they didn't kind of go beyond that here. Mr. Norris was then asked why, and he was asked to explain it. In fact, in several different ways, the government came at this question and we had read the decision previously, we understood we were trying to convince the jury of materiality and we knew exactly some of the arguments they were going to make, including in their, uh, motion for a judgment of acquittal. And so we came out at a couple of different ways and asked the question to try and tease out what exactly was going on here and what Mr. Norris says was it hurt his investors because it caused them to pay more than they would have otherwise. So to the extent that Mr. Shamegain keeps challenging me to cite a case, what I'm going to cite is the 2015 decision in this case. If that doesn't rule out the possibility of there being a substantial question, then it's hard to conceive of a case that is closer where the, this court has already actually ruled on the, in the record before it. Well, if I understood counsel, he suggested that they didn't challenge factual sufficiency in the first appeal. Well, I'm not sure that that's true. And if it was true, it was done in such a way that it was, um, it was hard to detect the, I understand they would like now to say they have two arguments and I get that they sort of have a 1A and 1B. Uh, 1A is the thing we're talking about now, but 1B is 2015 decision was wrong. Now, if they, if they want to make that argument, I think they have to petition for en banc hearing or cert. That's the law of the case. So we know the merits panel is going to apply that. So the question for your, your honors on this bail motion is just whether or not that raises a substantial question. The government submits it does not because you actually have a roadmap as to what the merits panel is going to apply. The same roadmap that judge Hall applied at the second trial. All right. I want to thank both sides for your arguments. We're going to take it under submission. Um, allow judge Cabranes to review the arguments and then we'll try and issue an opinion as quickly as possible or in order one. Thank you very much. Thank you, your honors. The remainder of our motions calendar is on submission.